C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANTONIO FERRI,

                                      MEMORANDUM AND ORDER

               Plaintiff,                  CV 09-182
  -against-                          (Wexler, J.)

JAN M. BERKOWITZ, EDWARD GRIECO,
EDWARD WILSON, and JMB GROUP, LLC.

               Defendants.

JAN M. BERKOWITZ and JMB GROUP,
LLC.,

               Third Party Plaintiffs,

  -against-

MATTEO PATISSO, LIQUID BRICK, INC.,
and NATIONAL FRAUD CONSTABLE,

               Third Party Defendants.
----------------------------------------------------------X

APPEARANCES:

    BRUCE H. KAPLAN, ESQ.
    Attorney for Plaintiff and Third Party Defendants
    35 Pinelawn Road, S104E
    Melville, New York 11747    -9010

    LAW OFFICES OF BRUCE E. BALDINGER, LLC.
    BY: BRUCE BALDINGER, ESQ.
    Attorneys for Defendants Jan Berkowitz and JMB Group, LLC

    Edward Grieco,
    Defendant Pro Se
    2080 Turtle Creek Way
    Lawrenceville, Georgia 30043

1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP.
BY: BRETT SHER, ESQ.
Attorneys for Defendant Edgar Wilson
150 East 42nd Street
New York, New York 10017-5639

WEXLER, District Judge

This is an action setting forth state law claims for fraud and breach of agreement as well as federal claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"). Federal jurisdiction is based upon the RICO claim as well as diversity of citizenship. The factual allegations underlying all claims are the same.

Presently before the court is the motion of Defendant Edward Wilson, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the all claims for failure to state a claim, and pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss for lack of personal jurisdiction. All other Defendants join in the rule 12(b)(6) motion to dismiss the claims on the merits.

## BACKGROUND

I. Factual Background: The Complaint

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court will outline here those facts relevant to the motion that are not in dispute and in the light most favorable to Plaintiff, the non-moving party.

A. The Parties and their Business Relationship

Plaintiff Antonio Ferri ("Plaintiff" or "Ferri") is an individual who resides in the State of New York, within this District. Third Party Defendant Matteo Patisso is Ferri's business agent. Defendant Jan Berkowitz ("Berkowitz") is an individual residing in the State of North Carolina.

Berkowitz is alleged to be a principal of Defendant JMB Group, LLC., a West Virginia limited liability corporation with its principal place of business in North Carolina. Defendant Edward Grieco ("Grieco") is an individual who resides in the State of Georgia, and Defendant Wilson is an individual residing in the State of Virginia.

The factual basis tying the parties together centers around a single $250,000 loan made by Ferri to Berkowitz (the "Loan"). The Loan was secured by a piece of real estate located in the State of West Virginia (the "Property"). According to the complaint, Defendant Grieco was the individual who introduced Ferri to Berkowitz, and acted on Berkowitz's behalf in his dealing with Ferri with respect to securing the Loan. Defendant Wilson, the individual who is moving to dismiss, is a real estate appraiser who is alleged to have provided Ferri with an appraisal for the Property. That appraisal is alleged to have valued the Property at $1,545,000.

The Loan, secured by the Property, was made to Ferri on December 14, 2007. On that date, Berkowitz executed a promissory note (the "Note") on behalf of JMB Group, as borrower, to the order of Ferri, in the amount of $250,000, with interest at the annual rate of 16%. The Note was payable in monthly (interest only) installment payments of $3,333.33, and was to be payable in full on December 14, 2008. As security for the Note, Berkowitz executed a Real Estate Deed of Trust dated December 14, 2007, on behalf of JMB Group, as grantor, conveying the Property to a trustee, who would have the power to sell the Property in the event of a default. Berkowitz also executed an Assignment of Leases and Rents for the Property. Finally, Berkowitz executed a personal guaranty of payment under which he guaranteed the performance and prompt payment of all of JMB's obligations to re-pay the loan.

B.  The Allegations of Wrongdoing and the Default on the Loan

The complaint sets forth certain facts with respect to Berkowitz in connection with the Loan. First, Berkowitz is alleged to have lied as to the representation that the Property was occupied by a tenant with a ten year lease. In fact, Ferri alleges, the property was vacant. Berkowitz is alleged to have been aware that the value of $1.45 million, assigned to the Property in Wilson's appraisal, was highly inflated. This is because Berkowitz, himself is alleged to have purchased the Property for only $160,000 in 2006. Ferri states that Berkowitz lied to him about this purchase price when Berkowitz stated to Patisso that he purchased the Property for "around $500,000."

Ferri alleges that Berkowitz never made any interest payment under the Loan. He is stated to have used the Loan to purchase "luxury vehicles, and to have never had any intention of repaying" the Loan. As a consequence of Berkowitz's non-payment, the obligation to re-pay the loan was accelerated, and the trustee had the right to sell the Property. The Property was sold at auction to Ferri for $150,000. Ferri states that the Property is currently unmarketable. As a consequence, Ferri states that he has sustained a loss of at least $300,000, which amount includes the loss of principal, interest, legal fees, court costs and expenses.

With respect to the alleged wrongdoing of the other Defendants, the complaint states that Grieco fraudulently represented to Patisso (Ferri's agent), that Berkowitz had a net worth exceeding $300 million. As to Wilson, the complaint alleges that the appraisal he rendered was fraudulent in its statement of value. The complaint also contains a factual allegations as to Edward Fortin ("Fortin"), an individual named as a Defendant who is no longer a party to this action. Fortin is alleged to have received $10,000 of the $250,000 loan made to Berkowitz.

C.   RICO Allegations

In support of the RICO claim, the complaint contains the following allegations, aimed at stating a claim pursuant to Section 1962(c). After a general statement that all "defendants" engaged in predicate acts constituting racketeering activity, the complaint attempts to amplify the allegations with facts in support of alleged predicate acts of bankruptcy fraud, mortgage fraud, tax fraud and wire fraud as follows.

The alleged predicate acts of bankruptcy fraud and mortgage fraud relate to filings and mortgages with respect to real property owned by Berkowitz, located in Nags Head, North Carolina (the "Nags Head Property"). With respect to the predicate act of bankruptcy fraud, the complaint states that, in connection with his filing for bankruptcy protection, Berkowitz failed to list his ownership of the Nags Head Property in his bankruptcy court "Statement of Financial Affairs." The alleged predicate act of mortgage fraud also refers to the Nags Head Property, stating that Berkowitz obtained two separate mortgages on this property, totaling in excess of $1.3 million, while reporting an annual income of only $21,730 with respect to the first mortgage, and $23,733 with respect to the second mortgage.

The alleged predicate acts of tax fraud and wire fraud are the only acts with any connection to the Loan. The predicate act of tax fraud, like the alleged acts of bankruptcy and mortgage fraud, refers only to conduct of Berkowitz, and not to any other Defendant. Specifically, Berkowitz is alleged to have engaged in tax fraud when he failed to report 2007 capital gains in connection with the proceeds of the Loan. Wire fraud is the single predicate act that attempts to implicate other Defendants in alleged predicate acts by asserting fraud in connection with the sending of the appraisal report and related documents regarding the Loan and

5

the Property, via e-mail, to Patisso's computer, located in the State of New York.

With respect to the RICO elements of enterprise (the "Enterprise"), and a pattern of racketeering activity, the complaint alleges that Berkowitz runs the Enterprise. The remaining Defendants are alleged to have had, and continue to have, "significant business dealings with Berkowitz and the Enterprise." The predicate acts are alleged to have been "neither isolated nor sporadic," but to have involved a "regular and repeated violation of law to accomplish the Defendants' desired ends in the course of the continuing business of the Enterprise." Plaintiff alleges that the predicate acts were related to each other by virtue of common participants, common methods of commission, and the common purpose and result of defrauding plaintiff and others.

## II. The Motion to Dismiss

As noted, Wilson moves to dismiss pursuant to Rule 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure. The 12(b)(6) motion seeks dismissal of all claims on the merits, and the Rule 12(b)(2) motion seeks dismissal on the ground of lack of personal jurisdiction. All Defendants join in the motion to dismiss this matter on the merits and Plaintiffs opposes all aspects of the motion. After outlining the applicable law, the court will consider the merits of the motion.

## DISCUSSION

### I. Legal Principles

#### A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint

6

should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570.

Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007); Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. When considering a motion to dismiss, the court must identify bare legal conclusions in the complaint. Where such conclusions are not supported by allegations of fact, they are not entitled to the assumption of truth. Iqbal, 129 S. Ct. at 1950. Well-pleaded factual allegations, on the other hand, are assumed to be true and may plausibly give rise to an entitlement to relief. Id.

While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2.

B.  Stating a RICO Claim

i.  18 U.S.C. §1962(c)

18 U.S.C. §1962(c) ("Section 1962(c)") makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. §1962(c). To establish a RICO claim pursuant to Section 1962(c), plaintiff must prove "(1) a violation of the RICO statute . . . (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 107 (2d Cir. 2001); Ritter v. Klisivitch, 2008 WL 2967627 *4 (E.D.N.Y. 2008); New York Transportation, Inc. v. Naples Transportation, Inc., 116 F. Supp.2d 382, 387 (E.D.N.Y. 2000). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286 306 (2d Cir. 2001), quoting, Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The motion to dismiss alleges a failure to plead either enterprise, or a pattern of racketeering activity. The court turns to the legal requirements for proper pleading of these elements.

1.  <u>Enterprise</u>

A RICO enterprise is defined broadly and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981); <u>see</u> <u>United States v. Morales</u>, 185 F.3d 74, 80 (2d Cir. 1999). Defendants stated to be members of the enterprise must "share a common purpose to engage in a particular fraudulent course of conduct" and work together to achieve their goal. <u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004).

In support of a claim that there exists a RICO enterprise, a plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. <u>First Capital</u>, 385 F.3d at 175-76. This requires a showing that each had "some part" in "directing the affairs of the enterprise." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993). While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. <u>DeFalco</u>, 244 F.3d at 309. Additionally, a claim of a RICO enterprise must be supported by information "regarding the hierarchy, organization, and activities of the alleged enterprise," to support the allegation that the enterprise is a functioning unit. <u>Continental Finance Co. v. Ledwith</u>, 2009 WL 1748875 *5 (S.D.N.Y. 2009) (citation omitted); <u>see also</u> <u>Mikhlin v. HSBC</u>, 2009 WL 485667 *3 (E.D.N.Y. 2009).

9

2. <u>Pattern of Racketeering Activity</u>

A "pattern of racketeering activity," requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period. 18 U.S.C. § 1961(5); see <u>First Capital</u>, 385 F.3d at 178; <u>New York Transportation</u>, 116 F. Supp.2d at 387; <u>Oak Beverages, Inc. v. Tomra of Massachusetts, LLC</u>, 96 F. Supp.2d 336, 346 (S.D.N.Y. 2000). Predicate acts of racketeering activity include a variety of federal and state criminal offenses including the federal wire fraud statute. 18 U.S.C. § 1961(1); see 18 U.S.C. § 1343 (wire fraud). While federal wire fraud constitutes a RICO predicate acts, common law fraud under state law does not constitute such an act. <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.</u>, 187 F.3d 229, 242 (2d Cir. 1999).

A RICO pattern is established by showing that the predicate acts relied upon are "related, *and* that they amount to or pose a threat of continued criminal activity." <u>Cofacredit</u>, 187 F.3d at 242, quoting, <u>H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989) (emphasis in original). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolated or sporadic." <u>GICC Capital Corp. v. Technology Finance Group, Inc.</u>, 67 F.3d 463, 467 (2d Cir. 1995). The element of continuity may be satisfied by a showing of either "open ended continuity" or "closed ended continuity." <u>H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 241-42 (1989); <u>Cofacredit</u>, 187 F.3d at 242.

2(A). <u>Open Ended Continuity</u>

To establish open ended continuity, it need not be shown that predicate acts were engaged in over an extended period of time. Instead, plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." <u>H.J., Inc.</u>, 492 U.S. at 242.

This threat of continuing criminal activity must extend "beyond the period during which the predicate acts were performed." De Falco, 244 F.3d at 323, quoting, Cofacredit, 187 F.3d at 242. The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. See Cofacredit, 242 F.3d at 242. If the enterprise alleged is engaged in "inherently unlawful" acts, there is a threat of continuing criminal activity and open ended continuity exists. Id.

On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity. Id.; see also GICC Capital Corp., 67 F.3d at 466; Allen v. New World Coffee, Inc., 2001 WL 293683 at *6 (S.D.N.Y. 2001); Jordan(Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 154 F. Supp.2d 682, 694-95 (S.D.N.Y. 2001).

2(B). Closed Ended Continuity

A RICO plaintiff may also satisfy the continuity element by a showing of "closed ended" continuity. Closed ended continuity is shown by proving "a series of related predicate acts extending over a substantial period of time." Cofacredit, 187 F.3d at 242. When calculating the relevant time period, the court considers only the time during which defendants committed the predicate acts alleged. DeFalco, 244 F.3d at 321. Actions that do not constitute predicate acts are not considered when calculating the relevant time period. GICC Capital Corp., 67 F.3d at 468.

The Second Circuit has noted that it has never held a period of less than two years of activity sufficient to satisfy the closed ended continuity requirement. See De Falco, 244 F.3d at

321. While closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the "number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes" as relevant when determining whether closed ended continuity exists. DeFalco, 244 F.3d at 321; New York Transportation, 116 F. Supp.2d at 388. The court must ensure that a RICO plaintiff "is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." First Capital, 385 F.3d at 181, quoting, Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997).

    ii.    18 U.S.C. § 1962(d)

Plaintiff also alleges a violation of the RICO conspiracy statute. Specifically, Plaintiff alleges a violation of 18 U.S.C. § 1962(d) ("Section 1962(d)"), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of the RICO statute. Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim. See First Capital, 385 F.3d at 182; Wild Edibles, Inc. v. Industrial Workers of the World, 2008 WL 4548392 *3 (S.D.N.Y. 2008).

II.    Disposition of the Substantive RICO Count

    A.    Plaintiff's Attempts to Plead Enterprise and Pattern of Racketeering Activity

While not stated specifically in the complaint, the court construes the complaint liberally to allege that the Enterprise is the statutory "group of individuals associated in fact although not a legal entity." See 18 U.S.C. § 1961(4). According to Plaintiff, this group consists of all Defendants. In support of the allegation of an enterprise, Plaintiff alleges, in the most general of terms, that Defendants were engaged in the alleged predicate acts of wire and tax fraud with

respect to the Loan, as well as bankruptcy and mortgage fraud with respect to the Nags Head Property. Plaintiff states, again, generally, that the predicate acts were "neither isolated or sporadic, but involved the regular and repeated violation of law to accomplish the Defendants' desired ends in the course of the continuing business of the enterprise." Additionally, Plaintiff alleges commonality of the enterprise's participants, victims, methods of communications, purpose and result.

B. The Complaint Fails to Plead Enterprise or a Pattern of Racketeering Activity

While the standard for pleading an enterprise in this circuit is liberal, the court cannot conclude that Plaintiff's complaint reaches even this low threshold. A RICO "association in fact" enterprise requires at least the pleading of an organized entity, and not, as here, pleading only that a group existed to commit a single act of fraud. With respect to this issue, the court notes that while the complaint alleges that Ferri and the other Defendants engaged in wire fraud with respect to the Loan (the single transaction forming the basis of Plaintiff's claim for damages), other predicate acts of alleged fraud (bankruptcy and tax fraud) have no connection whatever to the other Defendants. While the tax fraud claim relates to the Loan, it is factually related only to Berkowitz.

Additionally, there is no information in the complaint, nor can any be inferred, as to any hierarchy, organization or activities of the alleged enterprise, beyond the single fraudulent Loan transaction. Such allegations are necessary to properly allege that the enterprise functioned in an ongoing manner "a as a unit." See Wild Edibles, Inc., 2008 WL 4548392 *1-2. The conclusory pleading that Defendants each played a part in perpetrating a fraud on Plaintiff is not enough to satisfy RICO's requirement of an organized, separate enterprise. Accord Mikhlin, 2009 WL

13

485667 *3 (repetition of language of RICO statute is insufficient to plead RICO enterprise).

Even if the court were to conclude that the enterprise was properly alleged, the RICO claim would nonetheless be subject to dismissal for failure to plead a pattern of racketeering activity. This element, as noted, requires a plaintiff to plead at least two related predicate acts that were "neither isolated or sporadic" and therefore amount to or pose a threat of continued criminal activity. Cofacredit, 187 F.3d at 242. Continuing criminal activity is shown by pleading facts in support of either "closed ended continuity" or "open-ended continuity." H.J., Inc., 492 U.S. at 239; Cofacredit, 187 F.3d at 242.

Here, Plaintiff's complaint fails because he pleads neither open nor closed-ended continuity. As to the latter, the Second Circuit has noted that a period of at least two years of criminal activity is necessary to support an allegation of closed-ended continuity. DeFalco, 244 F.3d at 320; Mikhlin, 2009 WL 485667 *7. While the time period element is the most important factor to consider in the closed-ended continuity question, the court also considers, as noted, "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes . . . ." DeFalco, 244 F3d at 321.

Here, the only predicate acts that apply to all Defendants are acts of alleged wire fraud in connection with the Loan. The complaint sets forth eleven acts, ten of which occurred over an eleven day period, and one of which occurred six months later. This short time frame, even if including the last noted act, is too short to establish closed ended continuity. Moreover, instead of showing a variety of predicate acts, Plaintiff does nothing more than "artificially fragment" the single act of alleged fraud "into multiple acts simply to invoke RICO, " Estate of Warhol, 385 F.3d at 181, a tactic that does nothing to support a claim of closed-ended continuity. Where, as

here, a plaintiff alleges nothing more than a "single scheme of narrow scope . . . including one victim and a limited number of participants," closed-ended continuity does not exist. Ritter, 2008 WL 2967627 *11.

The finite nature of the alleged pattern of racketeering activity makes the complaint fall short of alleging open-ended continuity. Plaintiff alleges only a scheme to make a single fraudulent loan. There is no indication of an ongoing scheme, and no proper pleading of open-ended continuity.

In sum, Plaintiff's conclusory pleading that Defendants' acts were neither "isolated nor sporadic," is precisely the factually unsupported pleading of the law that is not entitled to any presumption of truth. See Iqbal, 129 S. Ct. at 1950. The court therefore holds that Plaintiff has pled neither closed nor open-ended continuity, and therefore fails to plead a pattern of racketeering activity sufficient to sustain a claim.

For the foregoing reasons, the court dismisses the Section 1962(c) RICO claim.

## III. Disposition of the Section 1962(d) Conspiracy Claim

To state a Section 1962(d) RICO conspiracy claim, a plaintiff must allege a substantive RICO violation. Cofacredit, 187 F.3d at 244-45; Allen, 2001 WL 293683 at *9 (S.D.N.Y. 2001). Because the court holds that Plaintiff has failed to properly alleged a RICO claim, the court grants the motion to dismiss the conspiracy claim.

Having dismissed the RICO claims, the court turns to consider whether there is personal jurisdiction over Wilson with respect to the remaining state law claims.

## IV. Personal Jurisdiction over Wilson as to the Remaining Claims

Where, as here, the basis of federal jurisdiction is diversity of citizenship, this court

applies the law of the State of New York to determine whether jurisdiction over the defendant may be exercised. See Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Katz v. Mogus, 538 F. Supp.2d 538, 541 (E.D.N.Y. 2007). see Fed. R. Civ. P. 4(k)(1)(A) (district court may exercise jurisdiction over a defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." See, e.g., Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). If, but only if, jurisdiction is proper under state law must the court address the issue of whether the exercise of jurisdiction comports with Sonstitutional standards of Due Process under the Fourteenth Amendment. Id. At 242.

A. Personal Jurisdiction Under New York Law

Plaintiff alleges personal jurisdiction over Wilson pursuant to sections 302(a)(2) and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR"). The court addresses each basis in turn.

1. Section 302(a)(2)

Section 302(a)(2) of the CPLR provides for long arm jurisdiction where the defendant is alleged to have committed a tortious act within the State of New York. New York courts, both state and federal, have interpreted this section to apply only when the Defendant is physically present in the state when the tort is committed. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789-90 (2d Cir. 1999); Bensusan Restaurant Corp. v. King, 126 F.3d 2528 (2d Cir. 1997); Team Obsolete, Ltd. v. A.H.R.M.A., Ltd., 2002 WL 719471(E.D.N.Y. 2002); Van Essche v. Leroy, 692 F. Supp. 320, 324 (S.D.N.Y. 1988). Relevant here is the

outside of New York with in-state consequence, the defendant either: (1) regularly does or conducts business in New York, (2) engages in any other "persistent course of conduct" in New York, or (3) derives substantial revenue from goods used or services rendered in New York. As to subsection (ii), jurisdiction is proper, if, in addition to commission of the tortious act outside of New York with in-state consequence, the defendant: (1) expects or should reasonably expect his acts to have New York consequences and (2) derives "substantial revenue" from interstate or international commerce. N.Y.C.P.L.R. §302(a)(3)(i)(ii); see LaMarca v. Pak-Mor Manufacturing Co., 713 N.Y.S.2d 304, 307 (2000); see also Overseas Media, Inc. v. Skvortsov, 407 F.Supp. 2d 563, 575 (S.D.N.Y. 2006). The final element is "designed to narrow the long arm reach to preclude the exercise of jurisdiction over non-domiciliaries who might cause direct, foreseeable injury within the state but whose business operations are of a local character." LaMarca, 713 N.Y.S.2d at 307-08 (citations omitted).

Plaintiff makes a prima facie showing that Defendant Wilson committed a tortious act outside of New York when he prepared the allegedly fraudulent appraisal. Even assuming that this act had consequence within New York, Plaintiff's complete failure to show the necessary additional elements under subsections (i) or (ii) of Section 302(a)(3) makes dismissal appropriate.

As to section 302(a)(3)(i), Plaintiff makes not even a prima facie showing to support a claim that Wilson regularly does or conducts business, or engages in any other "persistent course of conduct" in New York. Wilson is a real estate appraiser located in the State of Virginia who rendered an appraisal on a piece of property located in West Virginia. There is no allegation whatever of any work done by Wilson in the State of New York. The same result is reached with

18

respect to the final alternative prong of Section 302(a)(3)(i) – the substantial revenue issue. Since there is no allegation, must less any proof, that this Defendant regularly does or conducts business or engages in any other "persistent course of conduct" in New York, or derives substantial revenue from goods used or services rendered in New York, personal jurisdiction cannot be predicated on Section 302(a)(3)(i).

The court reaches the same conclusion with respect to Section 302(a)(3)(ii). As to this section of the CPLR, Plaintiff must make a prima facie showing that Defendant expects or should reasonably expect his acts to have New York consequences, and derives "substantial revenue" from interstate or international commerce. The test for determining whether a defendant "expects or should reasonably expect" his actions to have consequences in New York is objective, rather than subjective. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999); Tri-Coastal Design Group v. Merestone Merch., Inc., 2006 WL 1167864 *4 (S.D.N.Y. 2006); Courtlandt Racquet Club, Inc. v. Oy Saunatec, Ltd., 978 F. Supp. 520, 523 (S.D.N.Y. 1997). The "reasonable expectation" requirement under the New York long arm statute is interpreted in a manner consistent with Supreme Court precedent interpreting the requirements of the Due Process Clause of the United States Constitution. Kernan, 175 F.3d at 241; see Ivoclar Vivident, Inc. v. Ultident, Inc., 2005 WL 1421805 *5 (W.D.N.Y. 2005) ("reasonable expectation foreseeability requirement intended to avoid conflict with due process limits on exercise of jurisdiction).

A "mere likelihood or foreseeability that a defendant's product will find its way into New York" will support neither a finding of jurisdiction under New York law nor the Federal Constitution. Kernan, 175 F.3d at 241; see also Asahi Metal Indus. v. Superior Court of

19

California, Solano County, 408 U.S. 102, 110 (1987). Instead, the defendant must purposefully avail itself of the protections and benefits of New York law. See, e.g., Martinez v. American Standard, 457 N.Y.S.2d 97, 99 (2d Dep't 1982).

Plaintiff's allegations are insufficient to support a finding either that Wilson should have reasonably expected the act of performing an appraisal in West Virginia to have consequence in the State of New York, or that he has purposefully availed himself of the protections and benefits of New York law. Even assuming the sufficiency of Plaintiff's allegations as to these issues, there is absolutely no allegation or indication that Wilson derives "substantial revenue form interstate or foreign commerce." Plaintiff's allegations as to Wilson are plainly insufficient to make a prima facie case in support of personal jurisdiction pursuant to Section 302(a)(3)(ii).

For the foregoing reasons, the court holds that personal jurisdiction does not exist over Defendant Wilson, and the court therefore dismisses all claims as to this Defendant.

V. Remaining State Law Claims

Having dismissed the RICO claim as to all Defendants, and all remaining claims as to Wilson, the only claims remaining in this action are the New York state law claims relating to the Loan which are stated against the remaining Defendants. Federal jurisdiction remains, as there appears to be diversity of citizenship among the parties.

The motion presently before the court to dismiss the state law claims is a motion that was made only by Wilson. Berkowitz and JMB joined in Wilson's motion, and the dismissal of the RICO claims applies to these Defendants as well. As to the state law claims, however, these Defendants are not similarly situated to Wilson, and his arguments as to these claims to not apply to the remaining Defendants. The dismissal of Wilson as a Defendant makes it unnecessary to

rule on his arguments as to the viability of the state law causes of action and, therefore these claims remain as against the remaining two Defendants.

## CONCLUSION

For the foregoing reasons, Defendant Wilson is dismissed entirely from this action. All RICO claims against all Defendants are also dismissed. The case continues only as the state law claims against the remaining Defendants. The parties are directed conduct discovery within the narrower parameters of the case as it currently stands. The Clerk of the Court is directed to terminate any outstanding motion.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
August 25, 2009